(43 South. 54.)

No. 16,446.

In re PARKER, Dist. Atty.

STATE v. TAYLOR et al.

(Jan. 21, 1907.   Rehearing Denied Feb. 18, 1907.)

CRIMINAL LAW—CRIMINAL DISTRICT COURT—
JURISDICTION.

The criminal district court of the parish of Orleans is without jurisdiction to perform the duties and functions of a "juvenile court," as provided by Act No. 82, p. 134, of 1906, because its original jurisdiction is confined by the Constitution to offenses where the penalty of death, imprisonment at hard labor, or imprisonment without hard labor for a time exceeding six months, or a fine exceeding $300, may be imposed.   Article 139.

Riley Taylor and others were charged with being neglected and delinquent children. Judgment for defendants, and the state, on the relation of James P. Parker, applies for certiorari and mandamus.   Writs denied.

Robert Hardin Marr, for relator.   Adams & Otero and Joseph Edward Generelly, for respondent judge.

LAND, J.   The only question to be determined on this application is whether the criminal district court of the parish of Orleans can constitutionally exercise the jurisdiction conferred on it by Act No. 82, p. 134, of 1906, entitled:

An act "defining the power of the district courts of this state, outside of New Orleans, and the criminal district courts in New Orleans, and the city courts where same are in existence in the cities of the state outside of New Orleans, with reference to the care, treatment and control of dependent, neglected, incorrigible and delinquent children under the age of sixteen (16) years, and providing for the means by which such powers may be exercised."

The preamble of the statute recites that the ordinary process of the criminal law does not provide such treatment and care and moral encouragement as are essential to all children in the formative period of life, but endangers their whole future; that the real interest of children requires that they be not incarcerated in penitentiaries and jails, as members of the criminal class, but be subjected to a wise care, treatment, and control, that their evil tendencies may be checked and their better instincts may be strengthened, and that it is important that the power of the courts in respect to such children should be clearly distinguished from the powers exercised in the administration of the criminal law.   The act provides that the words "dependent child" and "neglected child" shall mean any child who is destitute, homeless, abandoned, or dependent on the public for support, or who has not proper parental care or guardianship; that the words "incorrigible children" shall mean any child who is charged by its parents or guardian with being unmanageable; and that the words "delinquent child" shall mean any child who may be charged with the violation of any criminal law of the state (excepting murder, manslaughter, rape), or any criminal ordinance of any city or parish in the state.

The act further provides that the power of the "juvenile court" may be exercised (1) on the petition of any citizen setting forth that, the child is neglected, dependent, or delinquent, and is in need of the care and protection of the court; (2) on the certificate of any magistrate or justice of the peace, in committing a child arrested for an indictable offense that, in his opinion, the good of the child and the interest of the state do not require a prosecution upon an indictment under the criminal laws of the state; (3) on a like certificate from the district attorney before or after indictment; and (4) whenever upon the trial of an indictment of a delinquent child the trial judge is of the opinion that the good of the child and the interests of the state do not require a conviction under the criminal laws of this state.

The act further provides that after a hearing the judge "may commit such child to the care of the parents, subject to the supervision of a probation officer, or to some suita-

ble institution, or the care of some reputable citizen of good moral character, or to the care of some training school, or to an industrial school, or to the care of some association willing to receive it"; and in either such case it shall be within the power of the court to make "an order upon the parent or parents of any such child to contribute to the support of the child such sum as the court may determine."

Under the subsequent provisions the judge is empowered to commit a delinquent child to the care of a reformatory institution, but it is enacted that no delinquent child under the age of 12 years shall be committed to any institution of correction or reformation unless after the probation system provided by the act has proved ineffective in the particular case. The act specially forbids the commitment of any neglected or dependent child to any institution of correction or reformation.

The powers conferred on the judge holding a session of juvenile court are by the very terms of the act intended to "be clearly distinguished from the powers exercised in the administration of the criminal law." The care of dependent and neglected children is purely a civil matter. Delinquent children within the purview of the act are not subject to be prosecuted, convicted, and sentenced for crime. It is true that such children may be committed to any institution for correction or reformation; but such a commitment is for the good of the child, and is not for the purpose of punishment, and is entirely within the discretion of the trial judge. In the language of the act, its object is to subject certain classes of children "to a wise care, treatment and control, that their evil tendencies may be checked and their better instincts may be strengthened." Minor children are subject to punishment and restraint by their parents and guardians. The act in question does nothing more than

to vest in certain courts jurisdiction over dependent, neglected, and delinquent children under the age of 16 years. This jurisdiction may be exercised in the case of a delinquent child on the petition of any citizen, or when the child has been arrested or prosecuted, on the certificate of the officials named in the act. The mere charge of the violation of any criminal law or ordinance gives the juvenile court jurisdiction, not to try, convict, and punish, but to inquire into the matter and to determine "what order for the commitment and custody and care of the child, the child's own good and the best interest of the state may require." The court may allow a delinquent child to remain in his own home or to be placed in some other home subject to the visitation of the probation officer, or may commit the child to a suitable institution for the care of delinquent children, or to any society duly incorporated, having for one of its objects the protection of dependent or delinquent children.

It is patent on the face of the act that all its provisions cannot be enforced by a court whose jurisdiction is confined exclusively to criminal matters. The district courts of this state, outside of the parish of Orleans, have both civil and criminal jurisdiction. In the parish of Orleans, the civil district court has exclusive original probate jurisdiction and exclusive original civil jurisdiction in all cases where the amount in dispute or the fund to be distributed exceeds $100, exclusive of interest. Article 133, Const. 1898. All civil jurisdiction not vested in the civil district court is vested in the city courts. Articles 143–147. The original jurisdiction of the criminal district court is confined to offenses where the penalty of death, imprisonment at hard labor, or imprisonment without hard labor for a time exceeding six months, or a fine exceeding $300, may be imposed. Article 139. Jurisdiction over all

other offenses against the state is vested in the city criminal courts. Article 140. The relators were charged with petit larceny of property worth less than $20, an offense punishable by imprisonment for not more than six months and not less than one month. Act No. 107, p. 162, of 1902, § 5. Hence the offense with which relators were charged is not within the original jurisdiction of the criminal district court, and the Legislature has no power to increase or diminish the jurisdiction of that court. The Legislature, however, did not intend that the nature of the charge against a delinquent child should determine the jurisdiction of the juvenile court. Whether the charge be of felony, misdemeanor, or the violation of a municipal ordinance is immaterial under the statute. If there be any criminal element in its provisions, it results from the power to commit to an institution of reformation or correction. If such a committal be considered as a punishment, the criminal district court is certainly without original jurisdiction in the premises. It is to be noted that the other courts mentioned in the act—i. e., district and city courts in the country—have both criminal and civil jurisdiction. In the parish of Orleans the jurisdiction of the courts is either civil or criminal, and it is difficult to conceive how a mixed jurisdiction can be conferred on any of them without a violation of constitutional restrictions. Some of the duties imposed by the act in question are purely civil, while others are quasi criminal, such as the commitment of minors charged with criminal offenses.

We have read with interest the very able opinion of the respondent judge, who with great reluctance was compelled by his sense of duty to decline to exercise jurisdiction in the premises. We affirm his conclusion.

It is therefore ordered that the preliminary writs issued herein be recalled, and that relator's application be denied and dismissed, with costs.